No. 66,677

THE CATHOLIC DIOCESE OF DODGE CITY, *Plaintiff-Appellant,* v. CHAD A. RAYMER, ANTHONY HAMMEKE, TERRY RAYMER, TERESA RAYMER, ALLAN HAMMEKE, and BRENDA HAMMEKE, *Defendants,* v. FARMERS INSURANCE CO., INC., *Garnishee-Appellee.*

(840 P.2d 456)

Opinion filed October 30, 1992.

*Robert S. Lannin,* of Croker, Huck, Kasher, Lanphier, DeWitt & Anderson, P.C., of Omaha, Nebraska, argued the cause, and *Martin J. Keenan,* of Keenan & Boeckman, of Great Bend, was with him on the briefs for appellant.

*Jerry M. Ward,* of Ward Law Office, of Great Bend, argued the cause, and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff Catholic Diocese of Dodge City (Catholic Diocese) appeals the district court's finding in a garnishment proceeding that intentional damage to property caused by an insured minor is excluded from coverage under the provisions of the insurer's homeowners policy. The Court of Appeals reversed

the district court and remanded the cause with directions, finding that although the damage caused by the child's intentional act was intended to be excluded from coverage, the policy's severability clause made the policy ambiguous; therefore, the parents' negligent failure to supervise their child was covered by the policy. *Catholic Diocese of Dodge City v. Raymer,* 16 Kan. App. 2d 488, 825 P.2d 1144 (1992). We accepted Farmers Insurance Co.; Inc.'s (Farmers) petition for review. After review, we affirm the Court of Appeals.

Anthony Hammeke, a minor, participated in acts of vandalism at a school. The Catholic Diocese, owner of the school, filed a petition against Anthony and his parents, Allan and Brenda Hammeke, alleging a cause of action (1) for property damage against Anthony; (2) for property damage against Allan and Brenda based on their failure to exercise reasonable parental care in controlling and supervising Anthony; and (3) on their statutory liability, pursuant to K.S.A. 38-120, for the damages intentionally caused by Anthony. Farmers, Allan and Brenda's homeowners insurance carrier, was notified of the action.

Subsequently, the district court entered a default judgment in rem against Allan and Brenda Hammeke for failure to exercise reasonable parental care in controlling and supervising Anthony and awarded damages of $18,858.67. The Catholic Diocese then filed for an order of garnishment against Farmers. Farmers filed an answer to the garnishment, claiming it was not indebted to Allan and Brenda under their homeowners insurance policy because the policy did not cover property damage either expected or intended by the policy insureds. Both parties filed motions for summary judgment. The district court found that the intentional act of any insured was not covered by the homeowners policy and granted Farmers' motion for summary judgment.

The Catholic Diocese appealed, raising three issues: (1) Farmers is bound by the default judgment finding Allan and Brenda negligent in supervising Anthony because it refused to defend its insured rather than seek a declaratory judgment on its duty to defend or reserve its rights in the lawsuit; (2) under the policy language "an insured" should be equated with "the insured," so the exclusion from coverage does not operate against Allan and Brenda; and (3) the language of a severability of interests clause

in the policy makes the policy's exclusionary provision ambiguous, thereby providing coverage for Allan and Brenda's negligent act of supervising their child. The Court of Appeals found that the Catholic Diocese's first two claims had no merit, but determined the insurer's insertion of a severability of interests clause into its insurance policy made ambiguous the otherwise unambiguous language of the policy's exclusion for intentional acts by an insured. The Court of Appeals reversed the district court's award of summary judgment to Farmers in the garnishment action and remanded the cause with instructions to enter summary judgment for the Catholic Diocese. We granted Farmers' petition for review.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Patterson v. Brouhard,* 246 Kan. 700, 702-03, 792 P.2d 983 (1990). The parties agree there are no controverted material facts.

The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court. Whether an ambiguity exists in a written instrument is a question of law to be decided by the court. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988).

The pertinent provisions of the homeowners policy are as follows:

### "DEFINITIONS

"Throughout this policy, 'you' and 'your' mean the 'named insured' shown in the Declarations and spouse if a resident of the same household. 'We,' 'us' and 'our' mean the Company named in the Declarations which provides this insurance. In addition certain words appear in bold type. They are defined as follows:

1. Under Section II-Liability, **occurrence** means: a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **insured**. . . . .

7. **Insured** means you and the following **persons** if permanent residents of your household:
a. your relatives.
b. anyone under the age of 21.
. . . .

"**SECTION II-LIABILITY**
"Coverages

"**Coverage E-Personal Liability**
"We shall pay all damages from an **occurrence** which the **insured** is legally liable to pay because of **bodily injury** or **property damage** covered by this policy.
"At our expense we shall defend an **insured** against any covered claim or suit. We may investigate and settle any claim or suit that we consider proper.
. . . .

"Exclusions

. . . .
"**Applying To Coverage E AND F-Personal Liability and Medical Payments To Others**
"We do *not* cover **bodily injury** or **property damage:**
. . . .
3. Either:
a. caused intentionally by or at the direction of an **insured,** or
b. resulting from any **occurrence** caused by an intentional act of an **insured person** where the results are reasonably foreseeable.
. . . .

"Conditions

. . . .
2. *Separate Insurance.* **This** insurance applies separately to each **insured.** This condition does not increase our limit of liability for any one **occurrence.**"

Because the Catholic Diocese did not request that we review the Court of Appeals' rejection of its first two claims, the only question for this court to determine is whether the homeowners policy's severability of interests clause makes ambiguous the otherwise unambiguous language of the policy's exclusion for intentional acts by an insured, thereby providing coverage to the parents for their alleged negligent supervision of their child.

The Catholic Diocese asserts the policy's severability of interests clause, which states, "This insurance applies separately to each **insured,**" makes the policy's exclusionary provision ambiguous. Farmers argues the plain language of its policy excludes coverage for the damages sought to be recovered by the Catholic Diocese in its action against Allan and Brenda.

The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties. Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. Since the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured. When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 713, 732 P.2d 741 (1987).

To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. *Patrons,* 240 Kan. at 713.

The Court of Appeals noted that its initial reading of the exclusion indicated the property damage for which Allan and Brenda are alleged to be liable is not covered by the policy because the damage was intended by Anthony, an insured under the policy. In reaching the opposite conclusion, the Court of Appeals first discussed and distinguished two cases which determined that intentional acts of the insured were not covered under the homeowners policies.

In *Allstate Ins. v. Freeman,* 432 Mich. 656, 690, 443 N.W.2d 734 (1989), the Michigan Supreme Court considered the insured's assertion that the insurer had "a separate and distinct duty to cover each insured under the policy." The wife, an insured, shot an individual in the shoulder. The victim filed a tort suit alleging the husband negligently entrusted a firearm to his wife. The homeowners policy under which the husband sought coverage for the claim against him contained a provision excluding from coverage "bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an

insured person or which is in fact intended by an insured person." 432 Mich. at 685. The trial court granted the husband's insurer, Allstate, summary judgment in a declaratory judgment action, concluding the insurer had no duty under the terms of its policy to defend the husband in the tort suit. 432 Mich. at 682-84.

On appeal, the husband raised two arguments in support of his contention that Allstate had a duty to defend him in the tort suit. The Michigan Supreme Court rejected his first argument that the term "an insured" as used in the policy was ambiguous. 432 Mich. at 699. The husband additionally argued that Allstate had a separate duty to cover him under the policy. The Michigan court, however, found that any duty of the insurer to defend the husband was solely derivative of its duty to defend the wife under the policy. The court concluded the exclusion for intentional or criminal acts which cause "bodily injury" precluded the husband's claim for coverage for injuries caused by an intentional act of any insured under the policy. 432 Mich. at 692.

In support of its holding, the *Freeman* court cited and discussed cases where the insureds had sought coverage for claims brought against them for negligent entrustment of a vehicle. These cases denied coverage because the negligent entrustment theory is derived from the ownership, use, or operation of a vehicle. Because claims against the insureds actually using the vehicles were not covered, it followed that claims for negligent entrustment of the vehicles were also not covered. 432 Mich. at 690-92. The *Freeman* court looked to the underlying cause of the injury to determine coverage and not to the specific theory of liability. The *Freeman* court concluded that under such exclusion, the insurer had no duty to defend or indemnify the wife. 432 Mich. at 689-90.

While not actually considering the effect of a severability of interests clause on a provision excluding from coverage intentional acts by an insured, *Freeman* did consider and reject the assertion that the insurer had a separate duty to cover each insured under the policy. The *Freeman* court concluded an insurer's duty to defend and indemnify does not depend solely upon the terminology used in a plaintiff's pleadings. Rather, it is necessary to focus on the nature of an injury and not the nomenclature of the underlying claim in order to determine whether coverage exists.

The Court of Appeals noted that unlike Michigan, Kansas, in *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974), extended coverage under a homeowners policy to a claim for negligent entrustment of a vehicle. In *Noel,* the homeowners policy covered damages for bodily injury and property damage, but excluded from coverage " ' "the ownership, maintenance, operation, use, loading and unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining . . . ." ' " 214 Kan. at 147.

The *Noel* court noted the general rule that exceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. The court observed that in the homeowners policy the insurer agreed with the named insured to pay on behalf of the insured *all sums which the insured should become legally liable to pay because of bodily injury and property damages.* 214 Kan. at 149. It found nothing in this broad insuring clause which restricted coverage to accidents or injuries occurring on the premises of the homeowner. In fact, it was clear that the insuring clause covered a wide variety of accidents which might occur off the premises. The court stated that any escape from liability by the insurer under its policy would have to be found in the special exclusion which was set forth in its policy. The *Noel* court pointed out that where an insurer attempts to avoid liability under an insurance policy on the ground that the loss for which recovery is sought is covered by some exclusionary clause, the burden is on the insurer to prove the facts which bring the case within the specified exception. 214 Kan. at 150.

The *Noel* court noted it was not alleged in the petition that the Noels were liable on the theory that they owned, maintained, operated, or used the automobile or that the automobile was negligently driven by the Noels or their agent. The plaintiff's theory of damages was based upon the insureds' negligent entrustment of the vehicle. The court observed that the rationale of "negligent entrustment" is not founded upon the negligence of the driver of the automobile, but upon the *primary* negligence of the entruster in supplying the chattel, an automobile, to an

incompetent and reckless driver. The *Noel* court determined under such circumstances the policy afforded coverage. 214 Kan. at 150-51.

In *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748 (Colo. 1990), vandalism of an elementary school by the Chacons' 10-year-old son and another boy caused damages in excess of $6,000. The school district's insurer reimbursed the school district for the damages incurred. The insurer, pursuant to its subrogation rights, then filed suit against the Chacons pursuant to a statute which allows a school district to recover damages in an amount not to exceed $3,500 from the parents of a minor under the age of 18, living with such parents, who willfully damages property belonging to the district. A default judgment was entered against the Chacons for $3,492.21 plus costs and interest.

Prior to commencement of the suit by the school district's insurer, the Chacons filed a loss claim relating to the damages caused by their son's vandalism under their homeowners policy which was then in effect with American Family. Coverage was denied based upon the policy's "intentional act" exclusion. The Chacons then brought suit against American Family for breach of a contractual duty to defend, settle, or indemnify.

The Colorado Supreme Court rejected arguments that a severability of interests clause made ambiguous an exclusion for bodily injury or property damage "intended by any *insured.*" (Emphasis added.) In reaching its decision, the court discussed cases which concentrated on the meaning of the language "any insured" as opposed to "the insured." Although it acknowledged decisions finding similar exclusions from coverage ambiguous because of severability clauses, a majority of the *Chacon* court found the decisions denying coverage more persuasive, because each decision "considers and gives effect to all the policy provisions and recognizes that an insurance policy is a contract between the parties which should be enforced in a manner consistent with the intentions expressed therein." 788 P.2d at 752.

After considering this court's decisions in *Noel,* 214 Kan. 145, and *Rose Constr. Co. v. Gravatt,* 231 Kan. 196, 642 P.2d 569 (1982), the Court of Appeals found that the reasoning of the Michigan and Colorado courts was not persuasive. We agree with the Court of Appeals determination that the Michigan and Col-

orado cases are not persuasive. Unlike Michigan, Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability alleged. The Colorado action was based on the parents' statutory liability for their child's intentional damage to a school. In the present action, the parents were alleged to have negligently supervised their child.

In reaching its conclusion that the policy provided coverage, the Court of Appeals followed the reasoning of the Wisconsin Court of Appeals in *Northwestern Nat. Ins. Co. v. Nemetz,* 135 Wis. 2d 245, 400 N.W.2d 33 (Ct. App. 1986). In that case, the Wisconsin trial court construed the insurer's property insurance policies to afford liability coverage to an insured whose husband allegedly intended or expected the burning of a structure occupied by the insured's tavern and a third party's adjoining hardware store. 135 Wis. 2d at 250. The trial court concluded that the insurer's policies afforded liability coverage to the wife regardless of her husband's culpability. The insurer appealed. The Wisconsin Court of Appeals, observing that the insurance contract contained a severability clause purporting to separate the insureds' interests while the exclusion clause, "we do not cover . . . damage . . . expected or intended by an insured," attempted to join the insureds' obligations. 135 Wis. 2d at 256. It concluded that the contract was ambiguous because the severability clause created a reasonable expectation that each insured's interests were separately covered, while the exclusion clause attempted to exclude coverage for both insureds caused by the act of only one. Because it was required to construe the policy against the insurer and could not release the insurer from a risk that it could have excluded through more careful contract drafting, the Wisconsin Court of Appeals upheld the trial court.

This court previously considered the impact of a similar severability of interests clause on a policy exclusion in *Rose,* 231 Kan. 196. In *Rose,* a garnishment proceeding against an insurer, the insurer denied a claim for coverage based on a policy exclusion for " 'damage to (a) property owned or transported by the insured, (b) property rented to or in charge of the insured other than a residence or a private garage, or (c) property as to which the insured is for any purpose exercising physical control.' " 231 Kan. at 197. The *Rose* court observed that Gravatt, the insured for

whom coverage was sought, neither rented, was in charge of, nor controlled the damaged property, and then considered the impact of a severability of interests clause on the exclusion.

The *Rose* court resolved the issue of whether the claim against the insured was covered by the policy, noting the policy excludes damages to property "rented to or in charge of *the insured*" and found the policy's use of the term "the insured" to be significant because it obviously is not the same as "named insured" or "any insured." 231 Kan. at 198. Justice McFarland, writing for a unanimous court, observed that even in the absence of a severability of interests clause, a strong argument could be made that the exclusions did not apply to Gravatt inasmuch as he was the insured for exclusionary purposes, and he neither rented, had charge of, nor controlled the damaged property. The *Rose* court concluded the severability of interests clause could only buttress the argument that coverage as to each insured must be determined separately based on the facts applicable to each such insured.

The Court of Appeals noted that the general rule is that exceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. It found in light of *Noel*, which looked to the theory of liability in determining policy coverage, and *Rose*, which expressly held a severability clause requires that policy exclusions are to be applied only against the insured for whom coverage is sought, the exclusion in this homeowners policy should not be construed to deny coverage for Allan and Brenda's liability for negligently supervising their minor child Anthony. The Court of Appeals determined that Farmers' insertion into the policy of a severability of interests clause made ambiguous the otherwise unambiguous language of the exclusion for intentional acts by an insured.

In Kansas, the general rule is that exceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. Here,

the parents were alleged to have committed a negligent act, not an intentional act. We agree with the Court of Appeals determination that under the specific facts of this case, in construing the exclusionary and severability of interests clauses of a homeowners insurance policy, the exclusions are to be applied only against the insured for whom coverage is sought. The district court erred in granting summary judgment to Farmers in this garnishment action.

The judgment of the Court of Appeals reversing the district court and remanding the case is affirmed. The judgment of the district court is reversed and the cause is remanded with instructions to enter summary judgment for Catholic Diocese.