FILED
United States Court of Appeals
Tenth Circuit

December 4, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ALLIED WORLD SPECIALTY
INSURANCE COMPANY, f/k/a
Darwin National Assurance
Company,

      Plaintiff Counter Defendant -
      Appellee,

and

ATLANTIC SPECIALTY
INSURANCE COMPANY,

      Plaintiff Counter Defendant,

v.

BLUE CROSS AND BLUE SHIELD
OF KANSAS, INC.,

      Defendant Counter Plaintiff -
      Appellant,

and

BLUE CROSS AND BLUE SHIELD
ASSOCIATION,

      Defendant Counter Plaintiff.

No. 23-3130
(D.C. Nos. 2:18-CV-02371-DDC-ADM
& 2:18-CV-02515-DDC-ADM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

---

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

_____

Before **HARTZ**, **KELLY**, and **BACHARACH**, Circuit Judges.

_____

This case grew out of an insurance policy between Blue Cross and Blue Shield of Kansas and Allied World Specialty Insurance Company. Under the policy, Allied World provided Blue Cross with insurance coverage that included reimbursement of defense costs.

Blue Cross was sued and claimed coverage under the policy. With the onset of litigation, Blue Cross sought reimbursement from Allied World for defense costs. Allied World refused, and the refusal led to this litigation.

In applying the terms of the insurance policy, we consider two issues.

The first issue is how to interpret an exclusion that appears to scuttle coverages expressly provided under the policy. For example, the policy expressly covers claims that would necessarily involve managed care, which is Blue Cross's core business. But the policy also contains an exclusion for any activities involving managed care. So the policy appears to expressly cover and expressly exclude the same claims. The apparent conflict creates an ambiguity.

The second issue is how to interpret provisions barring coverage when a prior claim against the insured involved related conduct. For this issue, Allied World points to earlier litigation where Blue Cross had been

2

sued for using billing codes designed to underpay medical providers. Here, however, Blue Cross is being sued for antitrust violations involving restrictions on competition in various territories. Given the difference between the claims, a factfinder could reasonably conclude that the new antitrust claims lack any relation to the earlier litigation.

## Background

### 1.    Allied World provides liability coverage to Blue Cross.

Allied World provided Blue Cross with a liability insurance policy for directors and officers as well as for Blue Cross itself. (The parties refer to this as the *D&O Policy*.) The policy provided not only indemnity but also reimbursement for defense costs.

The policy covered suits against Blue Cross between July 1, 2012, and October 1, 2013. During this period, a group of providers and subscribers sued Blue Cross, alleging a scheme to underpay providers and overcharge subscribers by maintaining exclusive service areas and restricting competition. When Blue Cross was sued, it made a claim under the insurance policy; but Allied World denied the claim based on an exclusion for managed care activities.

The denial led Allied World and Blue Cross to sue each other. In this suit, Allied World sought a declaration that the claims weren't covered; Blue Cross sought a declaration of coverage and damages for breach of contract and the duty of good faith and fair dealing. In response, Allied

World invoked not only the exclusion for activities involving managed care, but also two other provisions. The first provision deemed a claim a part of earlier claims when they were "related." The second provision supplied an exclusion for prior litigation involving the same conduct.

**2.    Allied World obtains judgment on the pleadings.**

Each party moved for judgment on the pleadings. The district court granted Allied World's motion and denied Blue Cross's; and Blue Cross appeals, arguing that the district court erred in granting judgment to Allied World.

### Discussion

**1.    We credit Blue Cross's well-pleaded allegations.**

When reviewing a judgment on the pleadings, we conduct de novo review. *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1200 (10th Cir. 2016). We conduct that review as we would on a motion to dismiss for failure to state a claim. *Id.* So we credit the well-pleaded allegations of the complaint and construe them favorably to the plaintiff. *Ramirez v. Dep't of Corrs.*, 222 F.3d 1238, 1240 (10th Cir. 2000). Construing the complaint this way, we consider "whether it is plausible that the plaintiff is entitled to relief." *Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1025 (10th Cir. 2023) (quoting *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013)). For that inquiry, the parties agree that we should apply Kansas law.

4

**2.      We consider only the potential for coverage.**

No one knows whether Blue Cross will ultimately prevail in the litigation against the providers and subscribers. So Blue Cross isn't seeking indemnity from Allied World. At this stage, Blue Cross is seeking only reimbursement of defense costs.

We thus consider what the standard is when an insured seeks reimbursement of defense costs. Kansas courts haven't considered the standard in this situation. More commonly, insurance policies obligate the insurance company to defend an insured. For these policies, Kansas law entitles an insured to a defense based on a potential for coverage. *See Miller v. Westport Ins. Corp.*, 200 P.3d 419, 425 (Kan. 2009) (concluding that Kansas courts have consistently applied the "potential for coverage" standard to determine if an insurer bears a duty to defend the insured); *see also Bankwest v. Fid. & Deposit Co.*, 63 F.3d 974, 978 (10th Cir. 1995) (stating that under Kansas law, an insurer bears a duty to defend when the allegations of the complaint and underlying facts discoverable to the insurer suggest a "potential for liability").

But here, Allied World agreed to reimburse Blue Cross for its defense costs rather than provide a defense. So we must determine whether Kansas courts would apply a different standard when the insurance company promises reimbursement rather than a defense. We would ordinarily answer this question by examining opinions by the Kansas

Supreme Court. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). But that court hasn't confronted the issue. So we must predict what the Kansas Supreme Court would do in this situation. *Id.* In making that prediction, we can consider the RESTATEMENT OF LIABILITY INSURANCE and case law from other jurisdictions. *See Safeway Stores 46 Inc. v. WY Plaza LC*, 65 F.4th 474, 483 (10th Cir. 2023).

Both sources support use of the same standard when interpreting provisions for reimbursement and defense. For example, the RESTATEMENT says that "[t]he scope of the insurer's defense-cost obligation is determined using the rules governing the duty to defend . . . ." RESTATEMENT LIAB. INS. § 22(2)(a) (2019). The drafters of the RESTATEMENT explain that this is the approach taken by most courts to consider the issue. *Id.* cmt. a; *see also Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1170 (8th Cir. 2011) (noting that state courts have generally viewed an insurer's duty to pay defense costs as congruent to the duty to defend); *Port Auth. v. Brickman Grp. Ltd.*, 181 A.D.3d 1, 21 (N.Y. App. Div. 2019) (noting that the recent trend is to interpret a duty to reimburse defense costs based on the traditional analysis for a duty to defend).

We would thus ordinarily consider whether the combination of pleadings would show a potential for coverage. And coverage potentially exists if there's "a non-frivolous possibility that the claim against [the

6

insured] may fall within the coverage of the insurance contract." *Am. Motorists Ins. Co. v. Gen. Host Corp.*, 946 F.2d 1489, 1490 (10th Cir. 1991). Under this standard, Allied World would need to reimburse Blue Cross even if the possibility of coverage were remote. *Id.*

But Allied World argues that we should require actual coverage, rather than just potential coverage, because

- Blue Cross is sophisticated,

- Blue Cross has other coverage for activities involving managed care, and

- the policy disclaimed a duty to defend.

We reject these arguments.

Allied World points out that Blue Cross is sophisticated. But Blue Cross's sophistication wouldn't trigger different legal principles. *See New Castle Cnty. v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1189 (3d Cir. 1991) (stating that Delaware law contains nothing to suggest a different rule of construction when the insurance policy is obtained by a sophisticated buyer). After all, "the insurer is usually in a better position than even a sophisticated insured to know the scope of the insurance contract and its duties under it." *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 504–05 (Ill. 1998).

Nor would we apply different legal principles based on the applicability of other coverage. Under Kansas law, Allied World would

7

need to reimburse Blue Cross for defense costs if coverage under the policy were possible. *See Am. Motorists Ins. Co. v. Gen. Host Corp.*, 946 F.2d 1489, 1490 (10th Cir. 1991). So even if Blue Cross has other insurance for claims involving managed care, we couldn't disregard the possibility of additional coverage through the D&O Policy.

Allied World also notes that the policy disclaimed a duty to defend. But the policy didn't disclaim the duty to reimburse defense costs. The policy says that Allied World will reimburse Blue Cross on a current basis, "prior to the final disposition," for defense expenses that are covered. Appellant's App'x Vol. IV, pp. 893, 973. Because reimbursement is due before the final disposition, Allied World would need to provide reimbursement before anyone could know whether the underlying claims were actually covered. *See Bankwest v. Fid. & Deposit Co.*, 63 F.3d 974, 978 (10th Cir. 1995) (stating that coverage for indemnity can't be resolved until the suit is resolved). So the disclaimer of a duty to defend would not nix Allied World's obligation to reimburse Blue Cross for defense costs when actual coverage remains uncertain. *See Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1172 (8th Cir. 2011) (applying Iowa law to conclude that the insurer's disclaimer of a duty to defend does not nullify the duty to reimburse the insured for defense costs incurred in response to a potentially covered claim).

8

We thus assess whether the pleadings show a potential for coverage, addressing whether there's "a non-frivolous possibility that the claim against [the insured] may fall within the coverage of the insurance contract." *Am. Motorists Ins. Co. v. Gen. Host Corp.*, 946 F.2d 1489, 1490 (10th Cir. 1991); *see* pp. 6–7, above.

3.    **An ambiguity exists regarding the exclusion of activities involving managed care.**

Blue Cross's core business involves managed care. But the policy contains an exclusion for managed care activities. The potential for coverage turns partly on how we interpret this exclusion. For this interpretation, we read this exclusion narrowly. *Cath. Diocese of Dodge City v. Raymer*, 840 P.2d 456, 462 (Kan. 1992). In narrowly construing this exclusion, we regard ambiguities favorably to Blue Cross as the insured. *Id.* at 459.

In our view, an ambiguity exists from the combination of this exclusion with the provisions stating what Allied World will cover. These coverages include antitrust claims involving price fixing and monopolization. Given these coverages, an insured would presumably interpret the policy to provide reimbursement of defense costs when sued for price fixing and monopolization. But the exclusion purports to deny coverage when the price fixing or monopolization involves managed care.

The problem is that Blue Cross's core business is managed care. So if Blue Cross were to fix prices or monopolize a business sector, the conduct would inherently involve managed care.[1] As a result, when someone sues Blue Cross for price fixing or monopolization, the insurance policy appears to simultaneously cover and exclude the claim.

Of course, the purpose of an exclusion is to eliminate some of the coverage otherwise available. *See Simpson v. KFB Ins. Co.*, 498 P.2d 71, 76 (Kan. 1972) ("The very purpose of an exclusion clause is to exclude risks otherwise covered by general coverage clauses."). But if the policy expressly creates coverage for specific claims, elimination of that coverage in an exclusion requires clear, unmistakable language. *See Raymer*, 840 P.2d at 462 (holding that an exclusion to coverage must be defined in "clear and explicit terms").

---

[1] This anomaly remains true whether a price-fixing claim is brought under a theory of horizontal price fixing (between direct market competitors) or vertical price fixing (between different participants in a supply chain). *See, e.g.*, William Holmes & Melissa Mangiaracina, *Horizonal price-fixing*, ANTITRUST LAW HANDBOOK § 2:11 (2023) ("Horizontal price-fixing occurs when firms competing at the same market level (e.g., a group of manufacturers or a group of distributors) agree to fix or otherwise stabilize the prices that they will charge for their products or services."); John J. Miles, *Vertical Price-Fixing Agreements*, 1 HEALTH CARE AND ANTITRUST L. § 5:2 (2024) (stating that "[a] vertical price-fixing agreement (often called 'resale price maintenance') is an agreement between a supplier and its purchaser (e.g., a retailer) on the price or price level at which the purchaser must resell the product to its customers"). Either theory requires action by Blue Cross in its market.

10

The exclusion here lacks that clarity because the policy

- expressly covers claims for price fixing and monopolization and

- excludes coverage for any scenario where price fixing or monopolization could exist.

*See Citizens Ins. Co. v. Wynndalco Enters.*, 70 F.4th 987, 996–97 (7th Cir. 2023) (concluding that an insurance policy is ambiguous when it purports to supply coverage and takes it away through an exclusion); *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1265 (11th Cir. 2021) (stating that under Florida law, a policy is ambiguous when it expressly grants coverage and takes away that coverage through an exclusion).

Allied World insists that a broad application of the exclusion would leave some antitrust claims covered. For example, Allied World says that Blue Cross would remain covered for antitrust claims involving mergers and acquisitions. Even if Allied World were right,[2] the problem with its argument is that

---

[2]     Allied World's statement is questionable. For example, Allied World argues that the policy covers monopolization claims arising from mergers and acquisitions. But any monopolization claim requires a showing of market power. William M. Landes & Richard A. Posner, *Market Power in Antitrust Cases*, 94 HARV. L. REV. 937, 937 (1981). How could a merger or acquisition give Blue Cross market power in something other than managed care?

Allied World also insists that the policy covers claims of price fixing and restraint-of-trade with respect to acquisitions. For that argument,

- some claims (like price fixing and monopolization) are expressly covered under the policy and

- the policy excludes the coverage in the sole area where these claims could arise.

The policy thus creates an ambiguity even if some coverage otherwise existed for antitrust claims involving mergers and acquisitions. *See Am. Fam. Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1109 (Kan. 2008) ("[W]here the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." (quoting *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002))).

**4.    Ambiguities also exist on how to apply the provisions comparing the claims to the allegations in a prior case.**

The policy also contains two provisions potentially affecting coverage based on prior claims or allegations:

1.    Related claims are deemed made when the first claim was made.[3]

---

Allied World cites *Kalmanovitz v. G. Heileman Brewing Co.*, 769 F.2d 152, 155 (3d Cir. 1985). But the *Kalmanovitz* court held that manipulation of bidding and stock prices during an acquisition *did not* constitute price fixing or restraint of trade. *Id.* at 156–57. And Allied World does not identify any cases recognizing an antitrust claim where a company fixed prices of, or restrained trade in, something other than the goods or services that the company had sold.

[3]    Blue Cross argues that this provision addresses the amounts for retention and the limit on liability (rather than excluding anything falling within the coverage provisions). We need not address this argument.

2.      The claim is excluded when it derives from essentially the same facts or related wrongful acts that were previously litigated.

Allied World invokes both provisions, pointing to an earlier case that contained allegations that Blue Cross had used its software to

- manipulate billing codes to underpay medical providers and

- delay those payments.

The parties refer to that case as the *Love litigation*.

Under the policy provisions on related claims, we must compare allegations in the *Love litigation* to the current causes of action against Blue Cross. The current causes of action fall into three categories:

1.      subscribers' claims for overpayment based on Blue Cross's anticompetitive practices

2.      providers' claims for underpayment based on the same anticompetitive practices

3.      providers' claims for underpayment based on Blue Cross's selection of reimbursement rates for providers

The first two categories have nothing to do with the claims in the *Love litigation*.

For example, the claimants in the first category are subscribers, and the *Love litigation* had no allegations by subscribers. In the new litigation, subscribers allege that Blue Cross companies inflate premiums by preventing competition in a licensee's service area, inhibiting the sale of plans to outside investors, and preventing providers from paying less to

13

other plans for the same services. These allegations have no reasonable counterpart in the *Love litigation*.

The second category involves allegations of anticompetitive conduct by medical providers. Again, nothing similar existed in the *Love litigation*. For example, in that litigation, medical providers said nothing about the exclusivity of service areas, restrictions inhibiting sale to outside investors, or restrictions on payment to other health plans. Instead, the *Love litigation* focused solely on Blue Cross's manipulation of billing codes to shortchange providers and delay payments. And the new suit against Blue Cross doesn't address billing codes or billing practices.

The third category involves providers' claims about Blue Cross's rules governing reimbursement for patients with plans based elsewhere. These rules require providers to

- adhere to the reimbursement rules of the patient's out-of-state plan and

- accept reimbursement at rates agreed to by the Blue Cross plan where the services are provided.

For example, suppose that John has a health insurance plan with Blue Cross and Blue Shield of Kansas and gets treatment in Colorado. The treating doctor must adhere to Kansas' reimbursement rules, but the doctor would be paid based on Colorado's reimbursement rates. The providers allege that the combination of requirements results in underpayment.

14

Allied World argues that this cause of action resembles the allegations in the *Love litigation* because there the providers had

- complained about manipulation of billing codes through a program known as the *Blue Card* and

- relied on the Blue Plans' adherence to rules of the *Blue Card* program.

Here too, the providers are complaining about the rules incorporated into the *Blue Card*. So Allied World argues that this category of claims resembles the providers' allegations in the *Love litigation*.

Suppose that Allied World is right. Even with this assumption, the new litigation would include

- two categories of claims unrelated to the *Love litigation* and

- one related category of claims.

Ultimately, the presence of some unrelated claims would require Allied World to reimburse Blue Cross for all of its defense costs. *See Spivey v. Safeco Ins. Co.*, 865 P.2d 182, 188 (Kan. 1993) (concluding that a duty to defend existed if the complaint contained a claim that is clearly not covered if another claim was potentially covered); *see also Leonard v. Maryland Cas. Co.*, 146 P.2d 378, 381 (Kan. 1944) (stating that when an injured person's action includes some grounds that are covered and some that aren't, the insurance company can't decline to defend the insured).

Because some of the claims are unrelated, the provisions do not eliminate the potential for coverage.

15

**5.    Allied World wasn't entitled to judgment on the pleadings.**

Given the ambiguities and the potential for coverage, the district court should not have granted judgment on the pleadings to Allied World on its cause of action for declaratory relief. *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 183–84 (5th Cir. 2007) (reversing a grant of judgment on the pleadings to the insurer because the policy language was ambiguous). So we reverse the grant of judgment to Allied World on the cause of action for a declaratory judgment.

Given that reversal, we also conclude the district court should not have granted judgment on the pleadings to Allied World on Blue Cross's counterclaims for breach of contract and breach of the duty of good faith and fair dealing. On remand, the district court should further address these causes of action.[4]

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[4]    In the *Conclusion* to its initial brief, Blue Cross says that it's entitled to judgment as a matter of law. But Blue Cross hasn't developed an argument for judgment in its own favor.