(159 P.3d 215)
No. 97,308

ANTRIM, PIPER, WENGER, INC., *Appellee,* v. DAVID W. LOWE and
DEBORAH LOWE, *Appellants.*

—

Opinion filed June 8, 2007.

*Richard D. Loffswold, Jr.*, of Girard, for appellants.

*Vernon L. Jarboe* and *Martha A. Peterson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for appellee.

Before MARQUARDT, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: David and Deborah Lowe appeal from a summary judgment granted in favor of Antrim, Piper, Wenger, Inc., a real estate broker. Antrim sued the Lowes for commissions allegedly earned in the sale of the Lowes' 1,210-acre ranch. On appeal, the Lowes contend that the trial court inappropriately granted summary judgment because genuine issues of material fact remained at issue. We disagree. Accordingly, we affirm.

On March 31, 2004, David W. Lowe signed a nonexclusive right to sell agreement with Einer Johnson, a real estate agent for Antrim, Piper, Wenger, Inc. (Antrim), to sell the Lowes' ranch near Sedan, Kansas. This contract allowed Antrim to list and sell the property for $1,500,000 during a period between March 22, 2004, and August 22, 2004. The commission was to be 5%.

On May 19, 2004, Alan Lewis called Johnson to inquire about the ranch. Lewis discovered the property and obtained Johnson's phone number from Antrim's website. The parties disagree over exactly what happened next. Johnson stated that Lewis, who arrived that day in Sedan with his business partner, Murray Logan, told Johnson not to come to the ranch because he just wanted to look around. Nevertheless, Deborah Lowe, David's wife, testified that Johnson told Lewis he had other arrangements that day and could not show Lewis the property. Johnson then stated that he gave Lewis directions to the ranch but Lewis seemed confused. After talking to Lewis, Johnson called the Lowes and spoke to Deborah. He told her that people interested in the property were staying at the Ranch Motel in Sedan and that she might want to help them find the ranch. Johnson recommended that Deborah and David go into town to pick them up. Nevertheless, David stated that he did not want to drive to Sedan.

Deborah then called the Ranch Motel and the Ranch Restaurant, which is next to the hotel, and asked if two men from Florida were there. The waitress at the restaurant stated that nobody was there but that she would give the men the Lowes' phone number if she saw them. Around noon, Lewis and Logan entered the restaurant and the waitress gave them the number. Deborah gave Lewis directions to the ranch. Once they arrived, David showed them around the land. When Lewis decided to buy the property, David wrote a contract for sale which Lewis signed. The contract stated:

"Agreement to purchase 1210 acre Walkin Man Ranch of Sedan, Kansas. Sellers and buyers need 1031 exchanges so the contract will be subject to exchanges. Earnest money to begin this transaction will be $75,000.00 paid to sellers David and Debbie Lowe on May 19, 2004. Purchase price to be $1,500,000.00. Buyers are Alan and Karen Lewis, 907 Winibark St. Okeechobee, Fl. 34972."

Later that evening, Johnson called and spoke to David who told him that Lewis and Logan bought the property. Although Johnson offered to write a contract for the sale, David refused his assistance.

To complete the sale, David spent many months searching for property he could purchase to exchange for the ranch in order to defer capital gains taxation—a 1031 exchange. On April 12, 2005,

the parties closed the sale of the ranch. Despite repeated requests, the Lowes refused to pay Antrim a commission on the sale. In June, Antrim sued the Lowes. Antrim moved for summary judgment. The trial court granted the summary judgment motion. The Lowes moved to alter or amend the judgment which the court denied.

*Did the trial court err in granting Antrim's motion for summary judgment?*

The Lowes contend that the trial court erred in granting Antrim's motion for summary judgment.

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

When there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004). Because the key fact of this case is undisputed, this court's review is de novo.

The Lowes first argue that summary judgment was inappropriate because they had retained the right to personally sell the property to an interested buyer. David showed the property and wrote the contract for sale. Deborah helped find the buyers and directed them to the ranch. Therefore, David maintains that Antrim did not earn a commission because he and Deborah completed the actual sale.

Because the brokerage contract between Antrim and David was a nonexclusive right to sell, David retained the right to sell his property. See *Foltz v. Begnoche*, 222 Kan. 383, 387, 565 P.2d 592 (1977). Nevertheless, the *Foltz* rule does not apply when the owner

uses a buyer procured by a real estate agent hired by the owner. If the agent efficiently produces a buyer who is ready, willing, and able to purchase the property and if the agent is the procuring cause of the deal, the agent is entitled to receive a commission. See *Martin v. Weidman*, 199 Kan. 716, 718, 433 P.2d 459 (1967). The agent is not required to introduce the parties or to bring them together personally. Nor is the agent required to procure a binding contract signed by the purchaser. *Owen v. Spangler*, 111 Kan. 484, 486, 207 Pac. 772 (1922). " 'It would not be essential that the agent should be present and participate in the consummation of the sale to be entitled to his commission, unless the terms of the contract between himself and the principal specially provided therefor . . . .' " *Dreisback v. Rollins*, 39 Kan. 268, 269, 18 Pac. 187 (1888). Nevertheless, "if [the agent] were otherwise entitled to a commission, the defendant could not defeat that right by closing the deal himself." *Holloway v. Forshee*, 208 Kan. 258, 261, 491 P.2d 556 (1971).

Here, despite the fact that the Lowes found the buyers in Sedan, showed them the property, and wrote the contract for sale, the key undisputed fact remains that the Lowes knew that Lewis and Logan had been sent to them through the efforts of Johnson, Antrim's salesperson. Moreover, without Antrim's website listing, Lewis would not have learned of the ranch. Without the website, Lewis would not have called Johnson and Johnson would not have alerted Deborah to the fact that buyers were in the area. Antrim was the procuring cause (a term apparently used interchangeably with "efficient cause" and "proximate cause") of the Lowes' deal with Lewis. David cannot defeat Antrim's right to a commission by closing the deal himself. Therefore, since the Lowes do not dispute that they sold the property to a purchaser whom they knew was sent to them by Antrim's salesperson, there is no genuine issue of material fact and summary judgment was appropriate.

Nevertheless, the Lowes argue that *Valley, Inc. v. Ward Parkway Bldg. Co.*, 3 Kan. App. 2d 131, 590 P.2d 1100 (1979), should control. In *Ward Parkway*, the parties entered into a nonexclusive contract to sell a warehouse for $1,500,000 net gain for Ward Parkway. The court found no evidence that the broker found a pur-

chaser who would pay a price sufficient to fulfill the contract because Ward Parkway eventually negotiated a sale for less than the required amount. 3 Kan. App. 2d at 132. Here, the ranch sold for the desired price in the agreement. Antrim procured a buyer who could fulfill all aspects of the sale agreement. *Ward Parkway* is distinguishable because the broker failed to procure a ready, able, and willing buyer for the price set in the brokerage contract. As a result, its holding is inapplicable to this case.

The Lowes next argue that the agreement allows Antrim to receive its commission only if the contract closed before November 22, 2004. The agreement, which expired on August 22, 2004, stated:

"In addition, if within ninety (90) days after the expiration or termination of this Agreement . . . Seller *enters into an agreement to sell or exchange said property* to any person . . . with whom Broker has negotiated for the purchase or exchange of such property during the term hereof, and Seller shall have knowledge of such person and negotiations, Broker shall be entitled to receive the full brokerage fee." (Emphasis added.)

Nevertheless, contrary to Lowes' contentions, the language does not require the sale to be completely closed. It requires only an "agreement to sell or exchange." On May 19, 2004, Lewis signed a contract agreeing to buy the ranch pending a 1031 exchange. This clearly constitutes an agreement to exchange property and fulfills the contract.

Finally, the Lowes argue that the following language produces an ambiguity in the contract:

"Seller authorizes the deduction of said brokerage fee from the Seller's proceeds at closing. The Seller agrees to divide equally with the Broker any deposit made on a contract and forfeited by a Buyer, but not in excess of the amount to which the Broker would be entitled as brokerage fees and the balance paid to the Seller. *Unless the seller is involved in a 1031 exchange.*" (Emphasis added.)

The Lowes now argue that, due to the phrase at the end of the paragraph, a reasonable trier of fact could conclude that Antrim would not be entitled to a commission if the sale involved a 1031 exchange.

"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation

of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. [Citation omitted.]" *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992).

An agreement is not made ambiguous merely because the parties disagree as to its meaning.

The first sentence of the disputed portion of the agreement reads as follows: "Seller authorizes the deduction of said brokerage fee from the Seller's proceeds at closing." This sentence expressly authorizes the brokerage fee to be deducted from the sale proceeds at closing. Unlike an ordinary sale of property, a 1031 exchange postpones recognition of a gain or loss when property used in a business is exchanged for like property because the taxpayer has not received any gain or suffered any loss in a general or economic sense. See *Carlton v. United States*, 385 F.2d 238, 241 (5th Cir. 1967). In a 1031 exchange, the proceeds of the sale of the ranch would be much less due to the exchange. Therefore, the conditional language contained in the disputed portion of the agreement relieves the seller from the burden of having the entire brokerage fee deducted from the reduced sale proceeds. The conditional language, however, does not relieve the seller from the obligation to pay the brokerage fee. Consequently, we determine that there is no ambiguity here.

In summary, there is no doubt that ordinarily when an owner of property lists the property with a broker for sale, and the broker produces a buyer to whom the owner's terms of sale are satisfactory, the owner expects to pay the brokerage fee indicated in the brokerage contract. It is unreasonable to assume that Antrim would agree to go without a commission if the Lowes decided to use a 1031 exchange to complete the sale of the property.

Therefore, even looking at the facts in a light most favorable to the Lowes, the trial court correctly found that no genuine issue of material facts exists in this case.

*Did the trial court abuse its discretion by denying the Lowes' motion to alter or to amend its judgment?*

The Lowes next argue that the trial court abused its discretion by not amending its summary judgment order. Nevertheless, the

Lowes repeat two of their contentions from their first argument: that the conditional language contained in the disputed portion of the agreement made the contract ambiguous and that the nonexclusive right to sell barred Antrim's claim for a commission. Because we have previously rejected these arguments, we need not address them again.

The Lowes' other argument asserts that Johnson did not have the permission of Deborah to list and sell the ranch even though she had a one-half ownership interest. The Lowes argue that the trial court abused its discretion since an issue of fact exists on whether Antrim would be entitled to a commission on Deborah's interest in the property because it never had her consent for the sale.

The Lowes did not raise the issue of Deborah's interest in the property before the trial court. Generally, issues not raised before the trial court cannot be raised upon appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). There are several exceptions to this general rule: (1) where the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) where consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) where the judgment of the trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a wrong reason for its decision. *Smith v. Yell Bell Taxi, Inc.*, 276 Kan. 305, 311, 75 P.3d 1222 (2003). None of those exceptions apply here.

In addition, the purpose of a motion to alter or to amend under K.S.A. 60-259(f) is to allow a trial court an opportunity to correct prior errors. *Denno v. Denno*, 12 Kan. App. 2d 499, 501, 749 P.2d 46 (1988). Yet, where a summary judgment is rendered and where a party moves to alter or to amend the judgment, a trial court in determining the validity of the summary judgment should limit its consideration to the matters which were before the court when it entered the judgment in the first instance. *State Bank of Burden v. Augusta State Bank*, 207 Kan. 116, 483 P.2d 1068 (1971). Because Deborah's alleged lack of consent to the sale of the ranch

was not before the trial court when it entered the summary judgment, the trial court properly denied the motion to alter or to amend.

Affirmed.