NOT DESIGNATED FOR PUBLICATION

No. 119,646

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Paternity of Z.H.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON GEIER, judge. Opinion filed January 25, 2019. Affirmed.

*Jennifer D.*, appellant pro se.

*Pantaleon Florez, Jr.*, of Topeka, for appellee.

Before ATCHESON, P.J., MALONE and LEBEN, JJ.

PER CURIAM: After the district court granted primary custody of Z.H. to his father, Jennifer D., the boy's mother, moved for reconsideration. When the district court denied that motion, Jennifer appealed to this court.

But her motion to reconsider was filed well after the statutory deadline for such motions—and even if it had been timely, she hadn't complied with an important condition the district court had said would be required before it would consider modifying the custody order. For these reasons, as we will explain in greater detail in our opinion, we find no error by the district court and affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

This case centers on a dispute between Jennifer and Z.H.'s father, Decorey H., over the custody of Z.H., who is 17 years old. Since the appellate record doesn't include

transcripts of any of the hearings in the district court, we must take the background facts from the district court's written ruling filed after the parties' dispute was tried in 2015.

Jennifer and Decorey were a couple when Z.H. was born in 2001. One day in 2002, Decorey came home to find that Jennifer had left with Z.H. Jennifer petitioned for protection from abuse against Decorey, which the district court granted. The court's order provided Decorey parenting time every other weekend, but Decorey testified that Jennifer didn't tell him where she lived and that Decorey had only limited contact with Z.H.

Jennifer and Z.H. moved to Texas during his fifth-grade year. At some point during the year, Decorey went to visit Z.H. in Texas. While he was there, Decorey noticed Jennifer's "appearance and demeanor had drastically changed." According to the district court's journal entry, Decorey said "[Jennifer's] house looked fine on the outside, but inside there was nothing more than a small dorm refrigerator, not even big enough to hold a gallon of milk."

Shortly after Decorey visited, Z.H. called his maternal grandmother, Sherry, asking her to come get Z.H. in Texas because his mom had "'changed.'" Sherry and her husband, Dale, went to Texas and stayed with Jennifer and Z.H. for a month. During their visit, Sherry and Dale discovered that Jennifer believed people were following her. After determining that nobody was following their daughter, Sherry and Dale returned home and left Z.H. in Texas, but Z.H. continued to call Sherry to tell her about his mother's strange behavior.

Jennifer and Z.H. ended up moving to Kansas from Texas before Z.H. started sixth grade. But after an incident involving Jennifer, her parents, Decorey, and Z.H., Z.H. went to live with Decorey in Topeka. Jennifer began filing emergency motions asking the district court to return Z.H. to her custody. The court denied those motions, and the dispute went to trial. Several mental-health specialists (including at least one psychiatrist) testified about

their evaluations of Jennifer. The court said that a psychiatrist, Dr. David Blakely, specifically testified that it was possible that Jennifer suffered from "paranoid or obsessive tendencies, or an eating disorder, but he did not have enough data to support those diagnoses." Still, the court noted that "Dr. Blakely said that an extensive forensic evaluation would be helpful in establishing a more reliable diagnosis for [Jennifer]."

After trial, the court issued a written ruling in which it concluded that it was in Z.H.'s best interests that Decorey "ha[ve] sole legal custody and residency of Z.H." The court said that "[a]fter hearing testimony in multiple hearings and at trial, it [was] clear to the Court that to allow [Jennifer] to exercise parenting time would seriously endanger Z.H.'s physical, mental, moral or emotional health." The court also said that "[t]o allow [Jennifer] to exercise any kind of parenting time at all would seriously jeopardize Z.H. in every way contemplated by statute," and the court prohibited Jennifer from having any type of contact with her son.

Finally, the court listed conditions Jennifer had to meet before it would "consider any motion to modify custody, residency or parenting time." One of those conditions was that Jennifer undergo a forensic psychiatric evaluation. In that written order, the court said that "Dr. Blakely recommended that [Jennifer] undergo a full forensic psychiatric examination. [Jennifer's] testimony and her demeanor at hearings and at the trial compel the Court to agree that this is necessary." The court said that Jennifer "indicated that she is willing to do [so]," and the court ordered "[Jennifer] to obtain such an examination at her expense and to cause the report—including the diagnosis and recommendations for treatment—to be filed with the Court."

More than three months after the court filed its written ruling, Jennifer filed a motion asking the court to reconsider its decision, claiming Decorey hadn't provided "a safe and healthy living environment for [Z.H.]" and that it was in Z.H.'s "best interest and well-being

3

to be in his mother's residential custody." She also said it was her parental right "to attain immediate sole legal custody and or joint custody with residential custody."

The district court denied that motion on May 5, 2016, and Jennifer appealed to this court on August 31, 2016. But under Kansas law, a notice of appeal must be filed within 30 days. See K.S.A. 2017 Supp. 60-2103(a). Because Jennifer filed her appeal outside that time, our court had no jurisdiction to hear her appeal and dismissed it.

Jennifer filed another motion to reconsider on January 4, 2018. Along with the same allegations that she made in her first motion to reconsider, Jennifer added a claim that the district court had erred by ordering her to receive a psychiatric evaluation. On March 5, 2018, the district court denied that motion and affirmed its requirement that Jennifer undergo a psychiatric evaluation. Jennifer appealed the district court's decision on March 12, 2018—so her appeal this time was within the 30-day time limit. But she then failed to file a brief in our court, and this second appeal was dismissed too.

Meanwhile, on May 15, 2018, Jennifer had filed her third motion in the district court for the court to reconsider—this time asking that it reconsider its March 5, 2018 denial of her second motion to reconsider. On June 13, 2018, the district court denied that motion, finding that "a trial court does not have jurisdiction to modify a judgment after it has been appealed . . . ." (Jennifer's second appeal was dismissed for the failure to file a brief that same day.) The district court also ruled that Jennifer's "motion for reconsideration [was] out of time," having been filed more than 28 days after the district court issued its March 5, 2018 order.

Jennifer then filed a notice of appeal from this third denial of a motion to reconsider. That notice of appeal, filed June 25, 2018, was timely to appeal the June 13, 2018 denial of her motion for reconsideration.

ANALYSIS

Jennifer is representing herself, and some arguments she makes in her appellate brief don't fall neatly into typical legal arguments. But they can be boiled down to a general claim that the district court improperly denied her last motion to reconsider. Decorey contends that the district court correctly denied Jennifer's motion based on the evidence. He also argues that Jennifer's position is barred by the law-of-the-case doctrine.

In Kansas, motions to reconsider are generally treated as motions to alter or amend under K.S.A. 60-259(f). See *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004); *In re Marriage of Kalmer & Daniels*, No. 118,394, 2018 WL 4373041, at *5 (Kan. App. 2018) (unpublished opinion). The district court may grant a motion to reconsider for an abuse of discretion when the decision goes against the evidence or when there is newly discovered evidence relevant to the issue before the court. See K.S.A. 2017 Supp. 60-259(a). We review the denial of a motion to alter or amend for an abuse of discretion. *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 30-31, 407 P.3d 246 (2017), *rev. denied* 308 Kan. 1593 (2018). A court abuses its discretion when no reasonable person would agree with the district court's decision or when the decision is based on a factual or legal error. See *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 292, 263 P.3d 767 (2011).

The purpose of a motion to alter or amend is to allow a district court to correct previous errors. *In re Marriage of Willenberg*, 271 Kan. 906, 910, 26 P.3d 684 (2001). It is not an opportunity to present additional evidence that could have been submitted. See *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939, 159 P.3d 215 (2007).

Here, the district court dismissed Jennifer's motion to reconsider filed May 15, 2018, for two reasons: (1) that it didn't have jurisdiction to rule upon her motion because Jennifer's appeal of the court's March 5 ruling was still active and (2) that Jennifer's

5

motion was filed out of time. We find no abuse of discretion in the court's denial of her May 15 motion.

First, a district court loses jurisdiction over a case upon the filing of a motion with this court to docket the appeal. *In re Care & Treatment of Emerson*, 306 Kan. 30, 35, 392 P.3d 82 (2017). Since Jennifer had already appealed her case when she filed her third relevant motion to reconsider, the district court didn't even have the authority to rule on that motion. There's a bit of a wrinkle here in that our court dismissed that pending appeal on the same day the district court denied Jennifer's motion based on the pendency of the appeal. But the appeal was certainly pending when Jennifer filed her motion.

Second, even if the same-day dismissal of her appeal might have given an opening to the district court to regain jurisdiction over Jennifer's motion, that motion still was untimely. Under K.S.A. 2017 Supp. 60-259(f), a party must move to alter or amend "no later than 28 days after the entry of judgment." Since Jennifer filed her motion more than two months after the district court's ruling, the motion came too late, so the court properly denied it.

We could end the opinion with that explanation. But even if the district court had reached the merits of Jennifer's motion, it did not abuse its discretion by denying another motion to reconsider its position—one it had made clear several times. Jennifer argues that the court erred by requiring a psychiatric evaluation before she could get a modification of the custody orders. But Jennifer's claim on that point isn't supported by the record before us.

In her January 4, 2018 motion, Jennifer specifically argued that the court's 2016 journal entry from trial incorrectly ordered her to receive a psychiatric evaluation because "Dr. Blakely wrote that if further evaluation was given [i]t could be a forensic evaluation

by a psychologist not a psychiatrist." Jennifer essentially claims that her psychological evaluation should suffice for the court-ordered psychiatric evaluation.

In its order, the district court said Jennifer failed to support her claim that the court's order that she receive a psychiatric evaluation was incorrect. But Jennifer didn't include the trial transcript in the appellate record, so there's no way we can review the trial proceedings to see whether the district court did, in fact, mean to order a psychiatric examination. The only thing we have to go on is the court's written ruling from the trial. As we've already noted, the court referenced and adopted Dr. Blakely's recommendation that Jennifer obtain a "full forensic psychiatric examination," and the court also said that Jennifer had "indicated that she is willing to do so." Without a transcript, we must accept the court's representation that Jennifer made that statement at the trial. And the district court has the authority to order a party to a child-custody dispute to receive a psychiatric evaluation if it determines that such an evaluation is necessary. See K.S.A. 2017 Supp. 60-235(a).

So the evidence in our record shows that the district court ordered Jennifer to receive a psychiatric evaluation instead of a psychological evaluation; Jennifer hasn't pointed to anything in the record to the contrary. A reasonable person could agree with the district court that Jennifer failed to fulfill her court-ordered requirements, so the court did not abuse its discretion when it denied her request for reconsideration.

We affirm the district court's judgment.