Atcheson, J., dissenting:
Based on the narrow issue Defendant Blue Cross and Blue Shield of Kansas presented in its motion for summary judgment and the limited factual support in the record, the Saline County District Court erred in holding as a matter of law that the insurance company *1070 properly refused to pay for an electronic prosthetic leg for Plaintiff Zachary Short. The contract language Blue Cross relied on to deny Short's request doesn't so obviously mean what the company says it means. And Blue Cross hasn't shown its denial fits within that language. I would reverse the summary judgment the district court entered for Blue Cross and remand the case for further proceedings. So I respectfully dissent from my colleagues' decision to affirm.
Factual and Procedural Background
The relevant underlying facts can be quickly outlined. Short had a medical insurance policy with Blue Cross when he suffered catastrophic injuries resulting in the amputation of both his legs. Short requested that Blue Cross pay for an Ottobock X3, an above-the-knee prosthetic leg. Blue Cross refused, claiming the Ottobock X3 fell within a policy limitation for certain prosthetic devices. Short sued Blue Cross for breach of contract. Short's other leg was amputated below the knee, and this case does not concern benefits related to that injury.
The insurance contract covered the cost of "[o]rthopedic and prosthetic devices ... includ[ing] ... artificial limbs" subject to a pair of related limitations:
"(3) Benefits are limited to the amount normally available for a basic (standard) appliance which allows necessary function. Basic (standard) medical devices or appliances are those that provide the essential function required for the treatment or amelioration of the medical condition at a Medically Necessary level.
"(4) Charges for deluxe or electrically operated orthotic or prosthetic appliances, devices or items are not covered, beyond the extent allowed for basic (standard) appliances. Deluxe describes medical devices or appliances that have enhancements that allow for additional convenience or use beyond that provided by a basic (standard) device or appliance."
For summary judgment purposes, nobody disputes Blue Cross was contractually obligated to pay for a prosthetic leg for Short. After Short asked Blue Cross to cover the Ottobock X3, the company responded that it would pay $ 2,925.32 as "the allowed [contract] amount for the basic (standard) knee" without identifying a particular device. The Ottobock X3 costs far more than Blue Cross' allowed amount. The parties did not identify an amount in their statements of fact on summary judgment, but the supporting evidentiary materials indicate a cost of about $ 145,000. The parties do not dispute the Ottobock X3 uses a battery for certain functions and, therefore, is "electrically operated" within the meaning of that phrase in policy limitations.
The district court found the policy limitations to be unambiguous and applicable to the Ottobock X3 and, therefore, granted summary judgment to Blue Cross, limiting the company's contractual obligation to $ 2,925.32. Short has appealed.
Summary Judgment for Blue Cross Improperly Granted
The standards for granting summary judgment and their review on appeal are well known. A party seeking summary judgment has the obligation to show, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in its favor as a matter of law. Trear v. Chamberlain , 308 Kan. 932, 935, 425 P.3d 297 (2018) ; Shamberg, Johnson & Bergman, Chtd. v. Oliver , 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the movant argues there is nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference. In ruling on a summary judgment request, the district court must view the evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. Trear , 308 Kan. at 935-36, 425 P.3d 297 ; Shamberg , 289 Kan. at 900, 220 P.3d 333.
An appellate court applies the same standards in reviewing the entry of a summary judgment. Trear , 308 Kan. at 936, 425 P.3d 297. Because summary judgment amounts to a question of law-it entails the application of legal principles to uncontroverted facts-an appellate court owes no deference to the district court's decision to grant the motion *1071 and review is unlimited. Adams v. Board of Sedgwick County Comm'rs , 289 Kan. 577, 584, 214 P.3d 1173 (2009) ; Golden v. Den-Mat Corporation , 47 Kan. App. 2d 450, 460, 276 P.3d 773 (2012).
In the district court, Blue Cross argued the contract language is unambiguous and plainly limits coverage for "deluxe" and electrically operated prostheses to the cost of what is considered a "basic (standard)" prosthetic. And Blue Cross said the evidence submitted in support of the summary judgment shows the Ottobock X3 comes within either limitation. The district court agreed. Blue Cross essentially reprises those points on appeal. The majority opinion focuses on the exclusion for electrically operated devices in affirming the district court. But the opinion also seems to conclude the Ottobock X3 can be excluded from coverage as a deluxe device. The contract language and the record evidence support neither conclusion.
A contract is unambiguous "if the language ... is clear and can be carried out as written." Simon v. National Farmers Organization, Inc. , 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). Conversely, an ambiguous contract "must contain provisions or language of doubtful or conflicting meaning." 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884. Ambiguity arises if "the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." Catholic Diocese of Dodge City v. Raymer , 251 Kan. 689, 693, 840 P.2d 456 (1992) ; Antrim, Piper, Wenger, Inc. v. Lowe , 37 Kan. App. 2d 932, 938, 159 P.3d 215 (2007). A contract, therefore, is not ambiguous simply because the parties disagree about its meaning. 37 Kan. App. 2d at 938, 159 P.3d 215. If a contract is unambiguous, it may be construed as a matter of law. See Osterhaus v. Toth , 291 Kan. 759, 768, 249 P.3d 888 (2011) ; Levin v. Maw Oil & Gas , 290 Kan. 928, Syl. ¶ 2, 234 P.3d 805 (2010) ("The interpretation and legal effect of a written instrument are matters of law ....").
Insurance policies are to be strictly construed, and any ambiguities should be resolved against the insurer, here Blue Cross. Bussman v. Safeco Ins. Co. of America , 298 Kan. 700, 707, 317 P.3d 70 (2014). The applicability of a policy limitation or exclusion to a claim reflects an avoidance or affirmative defense on which the insurer bears the ultimate burden of proof. Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co. , 51 Kan. App. 2d 459, 478, 350 P.3d 1091 (2015) (policy exclusion constitutes affirmative defense); Golden , 47 Kan. App. 2d 450, Syl. ¶ 20, 276 P.3d 773 (defendant carries burden of proof on affirmative defense). That means to prevail on summary judgment an insurance company must present uncontroverted evidence establishing that the limitation or exclusion applies. 47 Kan. App. 2d 450, Syl. ¶ 20, 276 P.3d 773.
Blue Cross contends the policy limitation categorically applies to any electrically operated prosthetic device and, thus, to the Ottobock X3. But the language doesn't say that. The limitation simply says that Blue Cross does not have to pay for the cost of "electrically operated ... prosthetic appliances ... beyond the extent allowed for basic (standard) appliances." The policy describes "basic (standard) devices" as those providing "the essential function required for the treatment or amelioration of the medical condition." If an electrically operated prosthesis is a "basic (standard) device"-a term that itself is fraught with ambiguity-then Blue Cross has to pay for it. Blue Cross would not have to pay for the additional cost of a higher grade electronic device with more bells and whistles than the basic (standard) one.
A clear categorical limitation of the type Blue Cross wants wouldn't be difficult to draft. For example, in paragraph (4) of the limitations, Blue Cross could have deleted the phrase "electrically operated" from the first sentence, leaving "deluxe" as the sole descriptor, and revised the second sentence to say that "[d]eluxe describes any electrically operated orthotic or prosthetic appliances or devices and those medical devices or appliances that have enhancements ...." Or Blue Cross could have added something like this as a freestanding sentence in one of the limitation paragraphs: "Any electrically operated orthotic or prosthetic appliance is not considered a basic (standard) appliance." Or this: "Any electrically operated orthotic or prosthetic appliance is considered a deluxe appliance."
*1072 Measured against that sort of plainly articulated limitation, the actual policy language should be fairly read to cover electrically operated prosthetics that otherwise can be characterized as "basic (standard)" devices. At the very least, the language is ambiguous and open to that reading, meaning it should be strictly construed against Blue Cross to include those devices. That's especially true when we consider the point in weighing the company's summary judgment motion. By rejecting either of those interpretations and buying into Blue Cross' self-serving reading of the limitation, the district court and my colleagues mistakenly deviate from the rules governing summary judgment and interpretation of insurance contracts.
But my take on the policy language wouldn't require reversal if Blue Cross had shown that the Ottobock X3 cannot be considered a "basic (standard)" device or must be considered a "deluxe" device as a matter of law based on the evidence presented on summary judgment. Those really are congruent frames for the secondary argument Blue Cross advanced in its summary judgment papers and again on appeal. The argument, however, fails on this record.
First, as I have indicated, the term "basic (standard)" used in the policy to describe prostheses and other devices or appliances is ambiguous. The phrase effectively presents "basic" as equivalent to or synonymous with "standard," and that is incorrect. Words not otherwise specifically defined in a contract should be given their ordinary meaning. See Pfeifer v. Federal Express Corporation , 297 Kan. 547, 550, 304 P.3d 1226 (2013). Thus, "basic" describes something "serving as the basis or starting point" as in "a [basic] set of tools." Merriam-Webster's Collegiate Dictionary 101 (11th ed. 2003). In that sense, "basic" connotes minimally acceptable for a particular purpose. By contrast, "standard" carries two potentially relevant meanings: "sound and usable but not of top quality" or "regularly and widely used." Merriam-Webster's Collegiate Dictionary 1216 (11th ed. 2003). The first meaning refers to a qualitative level that exceeds basic but falls short of, for example, deluxe. The second meaning refers to breadth of use and contrasts with limited or experimental. The Blue Cross policy presumably uses the word "standard" qualitatively, since it pairs with "basic," albeit in something of an oxymoron, and contrasts with "deluxe."
The phrase "basic (standard)" incorporates two qualitative levels-minimally acceptable and sound but less than the best. Applying the rule of strict construction of insurance contracts against the insurer, the phrase should be treated as referring to midrange quality unless the context obviously demands something else.
As defined in the policy, a "deluxe" prosthetic would be one that has "enhancements that allow for additional convenience or use" over and above "a basic (standard) device." In other words, a deluxe device would be better than a standard one. So Blue Cross would still be entitled to summary judgment if the record evidence indisputably shows the Ottobock X3 is better than a standard above-the-knee prosthetic leg. But the record doesn't establish that proposition as a matter of law.
The only uncontroverted fact Blue Cross offered on the point is a statement that the Ottobock X3 is "[t]he world's most technologically advanced prosthetic leg." Blue Cross identifies Ottobock's website as the source of the assertion. For summary judgment purposes, Short did not dispute the evidentiary foundation but characterized the statement as an "obviously promotional" advertisement of the device. But he cited no factual support for his characterization.
In opposing Blue Cross' motion, Short presented Dr. Todd Cowen's description of the Ottobock X3 leg as a "standard prosthetic appliance." Dr. Cowen, a medical doctor, prepared a lengthy life care plan for Short detailing his current and future medical treatment and related needs based on his injuries. In its reply, Blue Cross challenged Dr. Cowen's qualifications to make the statement but did not otherwise controvert that description of the Ottobock X3. Blue Cross argued Dr. Cowen's statement was irrelevant given the policy limitation for electrically operated devices. The district court neither ruled on Dr. Cowen's expertise nor specifically rejected his statement describing the Ottobock X3 as a standard prosthesis.[*]
*1073 [*]In its uncontroverted facts, Blue Cross also relied on Ottobock's website to show the prosthetic leg used a rechargeable battery, contained a microprocessor, and provided multiple "activity modes" that could be activated by a remote control. Those representations bear directly on the Ottobock X3 being electrically operated-an undisputed fact-rather than on its being standard or deluxe.
The dueling representations about the Ottobock X3 are more in the nature of factually unsupported opinions than they are facts. As such, they do little to inform the summary judgment determination. Ottobock's characterization of the prosthetic as the most technologically advanced has the look of puffing or an essentially unverifiable claim of superior quality that could not be legally enforced by a dissatisfied customer. See Golden , 47 Kan. App. 2d at 482, 276 P.3d 773 ("A seller's representations that goods are 'first rate' or 'the finest around' are examples of sales talk or puffing that would not create an express warranty."); see K.S.A. 84-2-313(2) ("seller's opinion or commendation of the goods does not create a warranty"). At most, the statement could (and may well) support an inference that the Ottobock X3 amounts to a deluxe prosthetic within the policy limitation. But granting summary judgment for Blue Cross based on the statement would require drawing an inference against Short as the nonmoving party, contrary to the governing standard of review. The error would be redoubled here, since Blue Cross has the obligation to present uncontroverted facts demonstrating a clear legal entitlement to the policy limitation.
If that were not enough, Dr. Cowen's representation about the Ottobock X3 at least arguably creates a disputed issue of material fact (or, more accurately, unsupported opinion) about the device. His representation that the Ottobock X3 is a "standard" prosthetic device could remove it from the policy limitation and may controvert Blue Cross' ostensible representation about its technological attributes. The representation, however, is ambiguous in its brevity. Dr. Cowen might well have been explaining that the Ottobock X3 is in common use and, thus, standard rather than experimental as opposed to being of middling quality or functionality. Without something more in the record explaining what Dr. Cowen meant, we would have to draw an inference against Short and for Blue Cross to disregard the statement for summary judgment purposes. Blue Cross didn't object to the representation from Dr. Cowen as vague and ambiguous or as an insufficiently supported opinion.
In sum, Blue Cross has failed to provide a sufficient factual basis to show that the Ottobock X3 is a nonstandard or deluxe prosthesis coming within the policy limitation as a matter of law. Could Blue Cross have done so? Maybe. Do I harbor doubts about whether Short will prevail on the merits? Indeed. But that is not the test I am supposed to use in reviewing a summary judgment. See Estate of Belden v. Brown County , 46 Kan. App. 2d 247, 276, 261 P.3d 943 (2011) (In reviewing summary judgment granted a defendant, an appellate court gives the plaintiff the benefit of all factual disputes and every reasonable inference drawn from those facts and asks whether a reasonable jury might render a verdict for the plaintiff-not whether such a verdict is probable.); Cine SK8, Inc. v. Town of Henrietta , 507 F.3d 778, 788 (2d Cir. 2007) ; Wright v. Enhanced Recovery Company, LLC , 227 F.Supp.3d 1207, 1215 & n.36 (D. Kan. 2016) ; Dreamland Villa Community Club, Inc. v. Raimey , 224 Ariz. 42, 46, 226 P.3d 411 (Ariz. App. 2010) (summary judgment not substitute for trial, "even if the trial court determines that the moving party will likely prevail at trial"); Community Hospitals of Indiana, Inc. v. Aspen Insurance UK Limited , 113 N.E.3d 636, 641 (Ind. App. 2018) ("Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial.").
Given the rules we are to apply and the factual record in front of us, the district court erred in granting summary judgment to Blue Cross. I would reverse and remand for further proceedings.