No. 127,896

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ALVIN JAMES MASON,
*Appellant*.

SYLLABUS BY THE COURT

1.

Time spent incarcerated before a defendant *commits* an offense goes far beyond the plain language of K.S.A. 2022 Supp. 21-6615(a), which only requires credit to be awarded for each day spent incarcerated "pending the disposition of the defendant's case." A case cannot be pending disposition before it is even committed.

2.

Under K.S.A. 20-370(a), a defendant convicted of a crime against a minor victim must pay a $400 Children's Advocacy Center (CAC) fee for each crime committed against a minor, not for each complaint or information charging multiple crimes.

Appeal from Riley District Court; JOHN BOSCH, judge. Submitted without oral argument. Opinion filed October 3, 2025. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

1

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

ARNOLD-BURGER, J.: Alvin James Mason pled guilty to one count each of attempted sexual exploitation of a child and attempted electronic solicitation. The district court imposed a 168-month prison sentence with lifetime postrelease supervision. Mason appeals his sentence. He asserts that he was entitled to more jail credit than he was awarded, his constitutional rights were violated by the court's failure to obtain a jury waiver before imposing postrelease supervision, and the court improperly assessed two Children's Advocacy Center (CAC) fees when only one was allowed by statute. Because we find he received all the credit to which he was entitled, he failed to preserve his constitutional claim for appellate review, and he was properly assessed two CAC fees, one for each crime of conviction, we affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

On June 9, 2023, the State filed a complaint in Riley County case No. 23-CR-251 (Case 1) charging Mason with nine total offenses occurring between May 19, 2023, and May 27, 2023, including charges for sexual exploitation of a child, electronic solicitation, aggravated intimidation of a witness, contributing to a child's misconduct, criminal threat, solicitation to aggravated escape from custody, and promoting obscenity to a minor. These crimes were committed in jail when Mason contacted an underage girl from jail on the jail tablet and asked her to perform sexual acts. At the time of the new crimes, Mason had been in jail for 245 days, on two unrelated charges, 21-CR-171 (Case 2) and 21-CR-174 (Case 3).

Near the end of December 2023, Mason signed a written plea agreement and agreed to plead guilty to amended charges of attempted sexual exploitation of a child and attempted electronic solicitation. In exchange for his guilty plea, the State dismissed the remaining charges in Case 1, as well as the charges in Cases 2 and 3. Based on his

2

anticipated criminal history score of A, the parties agreed to a controlling presumptive sentence of 168 months in prison.

The district court conducted a plea hearing in January 2024, first confirming that Mason had signed the plea agreement after reviewing it with his counsel. The court then presented Mason with a written waiver of rights, which Mason signed. The court explained the rights Mason was giving up by entering the plea and the possible penalties, which Mason indicated he understood. After confirming that Mason wished to plead guilty, the State offered a factual basis for the plea. This included a claim that the victim was 14 years old and Mason was over 18. Mason's counsel did not object to the factual basis. Thus, the district court found that Mason had freely, voluntarily, and intelligently waived his rights and found him guilty of the offenses.

The presentence investigation (PSI) report listed Mason's age at the time of the offense as 39 years old and his criminal history score as A and reflected that his convictions required lifetime postrelease supervision. The PSI report also indicated Mason was eligible for 285 days of jail credit for time spent in custody beginning on June 8, 2023—the date he was charged, approximately a week after the date of the offense.

At sentencing, Mason objected only to the amount of jail credit indicated on the PSI report, asking the district court to account for the time served on Cases 2 and 3 which had been dismissed by the State under the plea agreement. Accordingly, he believed he was entitled to 533 days rather than 285.

The State responded that rather than assigning a specific number that day, the "appropriate remedy" would be to simply order that Mason receive "all credit that he's due and owed" and Mason could raise an objection to the final journal entry if he disagreed with the amount of jail credit. The court noted Mason's objection, explaining

3

"we will proceed today, although we might not have the credit issue resolved and we can take that up later as suggested by counsel."

The district court then imposed the 168-month sentence anticipated by the plea agreement, reflecting the aggravated sentence of 136 months on the attempted sexual exploitation of a child charge and the standard sentence of 32 months on the attempted electronic solicitation charge to run consecutive. The district court also imposed lifetime postrelease supervision and a CAC fee of $800.

As for jail credit, the district court ordered that Mason would receive

"all credit for all time spent in the county jail while this case was pending and the credit that you're legally entitled to. And looks like we're going to need probably another hearing later on if that's something you don't agree to, Mr. Mason and counsel. So, if need be, we will schedule that at that time."

Immediately after, the court advised Mason he had 14 days to appeal the sentence under K.S.A. 22-3608.

Seven days later, Mason filed a motion requesting "a continuance of the time to file an appeal pursuant to [K.S.A.] 60-240 until a hearing can be had over credit for time served." In the motion, Mason requested 553 days of jail credit, which reflected the time served on Cases 2 and 3, which were dismissed under his plea agreement. To support the request, Mason attached a letter from the Riley County Police Department reflecting that Mason was arrested in Case 1 on "05/16/2023" and that his "Time Served @ Sentencing on 03/18/202[4]" was "308 Days + 245 Days from [Case 2 and Case 3]" for a total of "553 Days." Two days after he filed this motion, Mason moved to withdraw his plea based on the discrepancy about the amount of jail credit.

4

The State responded, challenging the dates indicated in the letter attached to Mason's motion and pointing out that the record showed he was arrested on June 8, 2023, and sentenced on March 18, 2024, entitling him to only 285 days of jail credit. The State urged the district court to deny Mason's motion for 245 more days of jail credit, explaining that the days Mason spent in jail on the dismissed cases occurred before he was arrested in Case 1.

The district court took up the jail credit issue at a hearing on April 10, 2024. Based on the testimony of Lieutenant Joshua Spencer from the Riley County Police Department on the days Mason spent in jail across the cases, the parties and court agreed that Mason spent 530 days in jail between his arrest on Cases 2 and 3 and sentencing but only 285 days between the arrest and sentencing on the charges in Case 1. As a result, based on K.S.A. 21-6615(a) and *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), the court ruled that Mason was only entitled to 285 days of jail credit for the time he spent in jail on the charges in Case 1. Before concluding the hearing, the district court discussed Mason's pending motion to withdraw his plea with defense counsel, scheduling a hearing the following week so counsel could discuss the matter with Mason.

Mason then filed a notice of appeal "from any and all adverse rulings of the Court" on April 16, 2024. At a hearing a few days later, Mason announced he no longer wished to withdraw his plea.

ANALYSIS

I.       *This court has jurisdiction to review Mason's sentencing challenges.*

Before addressing the merits of Mason's various sentencing challenges, we must first address the State's argument that we lack appellate jurisdiction because his appeal was untimely.

Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Jones*, 318 Kan. 600, 613, 545 P.3d 612 (2024).

The right to appeal is statutory and is not contained in the United States or Kansas Constitutions. *State v. Thurber*, 313 Kan. 1002, 1007, 492 P.3d 1185 (2021). The Kansas Constitution states that the Kansas Supreme Court "shall have . . . such appellate jurisdiction as may be provided by law." Kan. Const. art. 3, § 3. Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes, subject to certain exceptions. *State v. Clark*, 313 Kan. 556, 561, 486 P.3d 591 (2021).

Typically, a criminal defendant's sentence becomes final and appealable when the district court pronounces the sentence from the bench. *State v. Northern*, 304 Kan. 860, 862, 375 P.3d 363 (2016). Then, under K.S.A. 22-3608(c), the defendant "shall have 14 days after the judgment of the district court to appeal." Stated another way, the finality of a sentencing judgment derives its effectiveness from the pronouncement of sentence, not the sentencing journal entry. *State v. Juiliano*, 315 Kan. 76, 84, 504 P.3d 399 (2022).

Certain timely posttrial motions toll the time for appeal. See *State v. Swafford*, 306 Kan. 537, 540, 394 P.3d 1188 (2017). But the following types of posttrial motions stay or toll the time for appeal until such motions are resolved, after which the time for appeal commences: a renewal of a motion for judgment as a matter of law under K.S.A. 60-250(b); a motion to amend or make additional factual findings under K.S.A. 60-252(b); a motion for new trial other than those based on newly discovered evidence under K.S.A. 60-259; and a motion to alter or amend the judgment under K.S.A. 60-259(f). Mason did not file his motion for additional jail credit under any of these statutes; he instead asked the district court for a "continuance" under K.S.A. 60-240 to toll the time for appeal until the jail credit dispute could be resolved.

6

But the State's position that Mason did not cite one of the "tolling" statutes ignores the fact that Mason objected at sentencing to the amount of jail credit assigned. The court noted Mason's objection, explaining, "we will proceed today, although we might not have the credit issue resolved and we can take that up later as suggested by counsel." Although the district judge advised Mason that he had 14 days to appeal the decision, the judge also suggested that the decision was not yet final and would be considered further at a future court date. This is more like a motion to amend or make additional factual findings under K.S.A. 60-252(b) or a motion to alter or amend the judgment under K.S.A. 60-259(f), both of which do toll the time for appeal. Mason moved for a hearing date on the jail credit issue just seven days after the sentencing date after advising the court and the State at the time of sentencing that he objected to the jail credit ruling. It was reasonable for counsel to believe that was the appropriate course of action given the judge's comments that "we can take that up later as suggested by counsel" and "looks like we're going to need probably another hearing later on if that's something you don't agree to, Mr. Mason and counsel. So, if need be, we will schedule that at that time."

Although the State concedes that Mason's appeal was timely as related to the jail credit issue, it parses out his other two newly minted claims related to postrelease supervision and the CAC fee as untimely. We do not find this argument persuasive. The circumstances here were unique in that Mason *preemptively* challenged the sentencing order before the district court filed the journal entry of judgment—seeking a modification of the oral pronouncement from the bench. See K.S.A. 2024 Supp. 60-259(f) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."); *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, Syl. ¶ 7, 159 P.3d 215 (2007) (holding that the purpose of a motion to alter or amend judgment is to allow a trial court an opportunity to correct prior errors). To repeat, although motions for relief from a final judgment under K.S.A. 60-260(b) do not toll the time to file an appeal, a motion to alter or amend does toll the time to appeal. *In re Estate of Lentz*, 312 Kan. 490, 497, 476 P.3d 1151 (2020).

Moreover, although Mason only raised the jail credit issue at the hearing, the effect of his motion was to stay the oral pronouncement regarding the sentence until he could be heard. Whether jail credit is part of a sentence or can be corrected through a motion to correct an illegal sentence is irrelevant. Mason was seeking to amend the judgment and did so in a timely manner, tolling the appeal deadline until 14 days after the court ruled on his motion. Thus, his appeal was timely.

II.  *The district court did not err in denying Mason's motion for jail credit.*

Mason argues the district court erred by denying his motion for additional jail credit because he believes the court should have awarded him jail credit for all time spent incarcerated pending disposition of the cases that were dismissed under his global plea agreement.

To be clear, there is no dispute that Mason spent roughly 530 total days in custody pending the disposition of all three cases, or that Mason was entitled to 285 days of jail credit for the time he spent in jail after his arrest on Case 1. Both 533 days and 530 days are mentioned in the appellate record, but it appears the parties agreed to 530 total days although ultimately the difference is of no import here. The only disagreement is whether, considering recent Kansas Supreme Court decisions interpreting the jail credit statute, Mason should also receive credit in Case 1 for the 245 days he served on Cases 2 and 3.

We also note that Mason does not claim on appeal that the State violated the plea agreement. In other words, he does not contend that he signed the plea agreement on the condition that—and with the promise that—the State was going to recommend credit for 530 days served. Although he initially made that claim in district court and sought to withdraw his plea, he later withdrew that motion and does not reassert it here.

Our review of this issue is unlimited because the case involves a question of law arising on undisputed or admitted facts. *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019). In addition, this issue involves statutory interpretation, which also presents a question of law subject to unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

Mason was convicted in January 2024 for an offense that occurred in May 2023. At the time he committed that offense, jail credit awards were controlled by K.S.A. 2022 Supp. 21-6615(a) which provides:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. *Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case.*" (Emphasis added.)

For many years, Kansas appellate courts adhered to our Supreme Court's interpretation of K.S.A. 21-4614, the predecessor to K.S.A. 21-6615(a), which was that a defendant is entitled to credit only for time spent in custody "solely" on the charge for which he or she was being sentenced. See *Smith*, 309 Kan. at 981; *Campbell v. State*, 223 Kan. 528, 530-31, 575 P.2d 524 (1978).

But in 2023, the Kansas Supreme Court overruled this long-standing precedent, citing the "confusion, difficulty, and inconsistency" resulting from its application, holding that "[a] defendant is entitled to jail time credit against his or her sentence for *all* time spent incarcerated while the defendant's case was pending disposition." (Emphasis added.) *State v. Hopkins*, 317 Kan. 652, Syl., 537 P.3d 845 (2023).

9

In urging us to interpret *Hopkins* in a way as to provide him the jail credit he seeks, Mason correctly points out that in *Hopkins* the Supreme Court discussed this court's decision in *State v. Wheeler*, 24 Kan. App. 2d 616, 949 P.2d 634 (1997), a case with similar relevant facts.

Wheeler was charged in Johnson County for indecent solicitation of a child, based on a letter he allegedly sent from Sedgwick County to the victim in Johnson County in 1993. He was not arrested on that charge until January 1995. Six months later, while still in custody in Johnson County, the State charged Wheeler in Sedgwick County with multiple counts of aggravated indecent liberties involving the same child and unrelated charges in another case. He was arrested on the Sedgwick County charges while in the Johnson County jail, then transported to Sedgwick County the next day. Wheeler subsequently pled guilty to the charges in the Sedgwick County case, and the Johnson County charges were dismissed.

We pause to note that it is unclear from the opinion *when* Wheeler committed the Sedgwick County crimes. It seems unlikely that he committed an indecent liberties charge while in jail in Johnson County, although the Sedgwick County charges were not *filed* until he was already incarcerated in Johnson County. The opinion does not reveal the date of the commission of the Sedgwick County crime(s), although Wheeler argued that the Johnson County charges were "connected with the Sedgwick County case" to the extent that double jeopardy and compulsory joinder would prevent the Johnson County case from being refiled after it was dismissed. 24 Kan. App. 2d at 619.

At sentencing, the district court denied Wheeler's request for jail credit for the six months he spent in the Johnson County jail, only giving him credit for the two days that occurred after his arrest on the Sedgwick County charges. On appeal, this court affirmed, explaining that while such a result is "sometimes troubling," "[j]ail time credit is not earned under K.S.A. 21-4614 [the predecessor to K.S.A. 21-6615(a)] for time spent in jail

10

solely on account of charges *which are then dismissed*." (Emphasis added.) 24 Kan. App. 2d at 620; see *Campbell*, 223 Kan. at 531 (referring to this as "dead time'" or time spent awaiting trial on charges which are subsequently dismissed).

But *Hopkins* discussed *Wheeler* only in the context of explaining the confusing and inconsistent applications of the prior rule. See *Hopkins*, 317 Kan. at 658-59 (noting some defendants received credit "even if they had other charges pending" but that "[o]ther defendants were not so fortunate").

As additional support, Mason also invokes the Kansas Supreme Court's recent decision in *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025), which held that K.S.A. 21-6615 requires the district court to "award an allowance for all time spent incarcerated 'pending the disposition of the defendant's case.'" 320 Kan. at 311-12. This means a defendant receives one day of credit for each day spent incarcerated pending disposition of their case, even if they "received an allowance for some or all that time against a sentence in another case." *Ervin*, 320 Kan. at 312.

Contrary to Mason's suggestion, applying *Hopkins* and *Ervin* does not mean he is entitled to credit for the days he spent in jail before he committed the crime in the current case. Accepting Mason's argument that time spent incarcerated before a defendant *commits* the offense goes far beyond the statute's plain language, which only requires credit to be awarded for each day spent incarcerated "pending the disposition of the defendant's case." K.S.A. 2022 Supp. 21-6615(a). A case cannot be pending disposition before it is even committed. Such a rule would defy common sense because it would grant every incarcerated individual a de facto "Get Out of Jail Free" card to avoid penalties for any crimes committed while they are serving time on a different offense. If the maximum jail term on the new crime is less than what has already been served on pending prior crimes, regardless of whether the time is consecutive or concurrent to the prior crime, there would be no penalty the court could effectively impose.

11

And finally, Mason argues that a different rule is warranted when multiple cases are resolved by a global plea agreement. Yet he cites no authority recognizing that jail credit must be awarded evenly across all cases resolved by the same plea agreement. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("[a] point raised incidentally in a brief and not argued is . . . deemed abandoned"). And although *Hopkins* and *Ervin* hold that duplicative credit is permitted under the plain language of K.S.A. 2022 Supp. 21-6615(a), duplicative does not mean identical.

In sum, we find the district court correctly determined Mason was not entitled to the additional 245 days of credit because he served that jail time before he was arrested on the charges in the current case. Mason received credit for all the time he spent in jail between his arrest and sentencing in the current case, which is all he was entitled to under *Hopkins* and *Ervin*.

III.    *Mason did not properly preserve his constitutional objection to lifetime postrelease supervision.*

In his next issue, Mason argues for the first time on appeal that the district court improperly engaged in judicial fact-finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to increase his term of postrelease supervision to lifetime because he was over 18 years old when he committed the attempted sexual exploitation of a child offense.

Since Mason is challenging his lifetime postrelease supervision term for the first time on appeal, we must first determine whether to exercise our prudential authority to consider this unpreserved constitutional claim. Under Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36), Mason asserts the issue is properly before the court because it raises a purely legal question arising on undisputed or admitted facts and involves a fundamental right. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (listing three recognized exceptions to the general rule prohibiting issues from being raised for

the first time on appeal). Although he points out that Kansas appellate courts have addressed identical claims under these exceptions, Mason offers no additional explanation beyond citing some cases as examples. See, e.g., *State v. Conley*, 270 Kan. 18, 30-31, 11 P.3d 1147 (2000); *State v. Conkling*, 63 Kan. App. 2d 841, 844, 540 P.3d 414 (2023) (finding no *Apprendi* violation when defendant admitted age in signed plea agreement and financial affidavit and listing several unpublished cases that have rejected defendant's argument), *rev. denied* 318 Kan. 1087, *cert. denied* 145 S. Ct. 415 (2024).

Even though the Supreme Court has addressed *Apprendi* challenges to lifetime postrelease supervision terms based on the offender's age for the first time on appeal, the court has repeatedly and more recently stressed that Kansas appellate courts generally do not address legal theories raised for the first time on appeal, even those of a constitutional dimension. *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024). And even if an exception applies, we are under no obligation to review the new claim and we need to provide no reason for the denial. 319 Kan. at 730. The burden to convince us we should hear his new claim is on Mason. And we are not convinced.

First, Mason presents no explanation regarding his failure to raise this issue before the district court except to acknowledge that he failed to do so. If the failure was because of his attorney's failure to inform him of a constitutional right, he could pursue his claim under K.S.A. 60-1507.

Second, if having been advised of this right for a jury determination of his age would have caused him to reject the plea agreement, he could have pursued his motion to withdraw his plea, which he abandoned. In other words, we find it significant that there are other avenues available to pursue his claimed denial of a constitutional right which would give the district court and the State a full opportunity to address his concerns.

Third, *Apprendi* claims related to sentence enhancements have been widely litigated in Kansas. This would not have been a novel claim to make before the trial court. See *State v. Jelinek*, 66 Kan. App. 2d ___, 2025 WL 2630095, at *4 (2025).

And finally, Mason contends we can address his *Apprendi* claim by construing it as an illegal sentence claim. But our Kansas Supreme Court has made it clear that the definition of "illegal sentence" does not include a claim that sentence is illegal because it violates a constitutional provision—including an *Apprendi* violation. *State v. Hayes*, 312 Kan. 865, 868, 481 P.3d 1205 (2021).

In sum, we find Mason has failed to preserve his constitutional challenge to the lifetime postrelease supervision term and decline to consider it.

IV.     *The district court did not err by assessing two Children's Advocacy Center fees.*

Lastly, Mason argues the district court erred in imposing two CAC fees under K.S.A. 20-370(a), rather than a single $400 fee.

While Mason admits he did not object to the imposition of CAC fees below, we choose to review this unpreserved issue for the first time on appeal because it is a purely legal question of statutory interpretation that is determinative of the issue. See *Phillips*, 299 Kan. at 493. In addition, the State does not object to its consideration and fully briefs the issue.

Resolving this issue requires statutory interpretation, which presents a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be established. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). We must first attempt to determine legislative intent though the

statutory language enacted, giving common words their ordinary meanings 315 Kan. at 698. Unless the statute is ambiguous, courts need not resort to canons of statutory construction or legislative history to determine the legislative intent. *Betts*, 316 Kan. at 198.

The relevant statute is K.S.A. 20-370(a), which provides "[o]n and after July 1, 2013, any defendant convicted of a crime under chapter 21 of the Kansas Statutes Annotated, and amendments thereto, in which a minor is a victim, shall pay an assessment fee in the amount of $400 to the clerk of the district court." Here, the district court imposed an $800 CAC fee, which presumably reflects a $400 fee for each of his two convictions involving a minor victim.

While we are not bound by decisions of prior panels, we choose to adopt the plain language interpretation of K.S.A. 20-370(a) as determined by another panel of this court in *State v. Sanders*, 65 Kan. App. 2d 236, 264, 563 P.3d 234, *rev. denied* 320 Kan. 867 (2025), because it is well-reasoned and accomplishes the result most closely aligned with the clear legislative intent. In short, we find that the plain language of the statute refers to "'a crime,' which is a singular event [and] does not use the term per case," meaning that a defendant must "pay an assessment fee *for each crime* committed against a minor." (Emphasis added.) 65 Kan. App. 2d at 264. In other words, not for each complaint or information charging multiple crimes.

Mason asserts *Sanders* incorrectly interpreted the statute by comparing it to various fee statutes that explicitly set forth units of fee assessment "'for each'" or "'for every'" qualifying conviction within a case. *Sanders*, 65 Kan. App. 2d at 262-64; see also *Keys,* 315 Kan. at 698 (appellate courts should refrain from reading something into the statute that is not readily found in its words).

Contrary to Mason's point, *Sanders* did not review other fee assessment statutes as a basis for inserting words into the statute but to show that the Legislature knows how to use specific language to require imposing fees per charge, crime, or case depending on the goal of the statute. And the plain language of K.S.A. 20-370(a) requires imposing a singular fee for a singular crime committed against a minor without specific language limiting additional fees when multiple crimes are charged in a case.

We affirm the district court's order requiring Mason to pay $800 in CAC fees.

Affirmed.